## SMITH v. WHITE et al., Appellants.

### Division One, December 17, 1901.

1. **Evidence:** RELATIONSHIP: TESTIMONY OF ONE PERSON: FINDING OF JURY. The testimony of the plaintiff alone that she is a half-sister of the last owner of the land, under whom both plaintiff and defendant claim in ejectment, is substantial evidence to support the verdict of the jury finding that she was so related, and is sufficient to establish her right to inherit from that owner, although her legitimacy is disputed by defendant, another half-sister.

2. **Ejectment:** HUSBAND'S RIGHT TO RENTS OF WIFE'S LANDS. The husband, during coverture, is entitled, as husband, to the possession of the wife's lands and to the rents and profits arising therefrom, and his widow in ejectment is not entitled to recover for rents accruing prior to his death.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED ON CONDITION.

*James L. Minnis* and *Charles R. Pattison* for appellants; *Jno. B. Hale* and *L. A. Holliday* of counsel.

(1) As there was no evidence tending to prove that the respondent was a half-sister and heir of William Downey, that question should not have been submitted to the jury; but judgment should have been given for the appellants. Judgment should be rendered here for appellants. Hunt v. Railroad, 89 Mo. 607. (2) (a) The giving of respondent's instruc-

tion 6 was error. If respondent was the owner of the land at the time of her marriage in 1871, her husband, by virtue of his marriage with her, was the owner of the rents, issues and products, and was entitled to the possession thereof from the date of his marriage with respondent in 1871, until his death in October, 1896, during which period respondent was not entitled to the possession or rents or profits of said land and could not have been damaged by appellant's occupancy and use thereof. Kanaga v. Railroad, 76 Mo. 207; Wilson v. Garaghty, 70 Mo. 517; Dyer v. Wittler, 89 Mo. 81; Schouler on the Law of Domestic Relations (2 Ed.), top page 142-143. (b) If respondent inherited the land from Wm. Downey, deceased, she owned the same at the time of her marriage with Smith, whose marital rights therein then and there became vested and the subsequent enactment of what is now known as secs. 6864 and 6869, Revised Statutes 1889, did not in any way limit the then vested marital rights of the husband, Smith, which remained as at common law. Arnold v. Willis, 128 Mo. 145; Leete v. State Bank, 115 Mo. 185; Flesh v. Lindsay, 115 Mo. 1; Bledsoe v. Simms, 53 Mo. 305; Meyers v. Gale, 45 Mo. 416. (3) Respondent was not entitled to damages from the death of her husband to the filing of the suit. (a) If respondent is a co-tenant with appellant, Mary A. Downey, she was entitled to damages from the date of ouster only. Falconer v. Roberts, 88 Mo. 574. (b) Respondent could not have been ousted during the life of her husband because he was entitled to the possession of the land until his death. "But the wife's right of entry will be postponed until the termination of the coverture by the death of the husband." Arnold v. Willis, supra. (c) There can be no ouster of one whose right of entry is postponed until the death of one having the right of entry for life, during the life of the latter. There could have been no ouster of the respondent until the death of her husband, as her right to enter was postponed until the termination of the coverture. There

can be no ouster where there is no right of entry.    Keith v. Keith, 80 Mo. 125; Arnold v. Willis, supra; Wilson v. Garaghty, supra; Kanaga v. Railroad, supra.

*Lozier & Morris* for respondent.

(1)    The court did not err in submitting to the jury the question as to whether or not respondent was a half-sister and heir at law of William Downey, deceased.    The evidence was positive and conclusive as to the relationship; in fact, no other inference could reasonably be drawn from the testimony.    An appellate court will not reverse a judgment for insufficiency of evidence, unless it can say that the evidence does not tend to establish the facts found by the jury.    Moore v. Railroad, 73 Mo. 438; Matney v. Railroad, 30 Mo. App. 507; Green v. Cooperage Co., 50 Mo. App. 202; Duggan v. Railroad, 46 Mo. App. 266; Cohn v. Kansas City, 108 Mo. 387; Peltz v. Eichele, 62 Mo. 171.    The instructions given on behalf of plaintiff required the jury to find that plaintiff was the half-sister of William Downey, deceased, before they could find for plaintiff.    1 Thompson on Trials, sec. 1037; Nichols v. Carter, 49 Mo. App. 405; Brown's Legal Maxims, p. 945; Riney v. Vanlandingham, 9 Mo. 823; Garth v. Caldwell, 72 Mo. 629; Ins. Co. v. Cahn, 9 Mo. 421; Noble v. Blount, 77 Mo. 239; R. S. 1899, sec. 865.    (2)    (a)    If the court committed error in giving, in respondent's behalf, instruction 6, permitting the assessment of damages for five years prior to the filing of plaintiff's petition, still, this cause should not be reversed, as this court may, in affirming the case, modify the judgment, as to damages, and give such judgment as the trial court ought to have given, or as to this court seems agreeable to law.    R. S. 1899, sec. 866; Nolan v. Johns, 126 Mo. 168; Hunt v. Railroad, 89 Mo. 609; Hat Co. v. Hombes, 127 Mo. 402; Westcott v. Bridewell, 40 Mo. 146; Miller v. Hardin, 64 Mo. 545; Mueller v. Kaessman, 84 Mo. 330; Land Co. v.

Bretz, 125 Mo. 423; State ex rel. v. Tate, 109 Mo. 265; Norton v. Paxton, 110 Mo. 456. (b) Respondent here and now offers to remit all damages which this court finds were improperly awarded to her in the trial court. (c) In reply to appellant's contention that there was no proof of ouster after the death of respondent's husband, we submit that the ouster by appellants was a continuing one. Plaintiff and her husband were ousted, according to the undisputed testimony, in 1889, and after that date appellants' possession was notoriously adverse, before and after the death of respondent's husband.

MARSHALL, J.—Ejectment for an undivided one-fourth interest in certain real estate in Carroll county. The plaintiff recovered judgment in the circuit court, and defendants appealed. The defendants, T. D. and N. M. White, are the tenants of the real defendant, Martha A. Downey. The ouster is laid as of December 3, 1889. The suit was begun to the November term, 1897. The answer of Martha A. Downey is a general denial, except as to possession, and a special plea that the rights of the parties to the land in question were adjudicated in 1889, in a prior ejectment suit. Upon the trial the defendant also claimed title by limitation, but as the jury found that issue under admittedly proper instructions against her, she does not urge that defense here. In fact, the appellant assigns only two errors, to-wit, first, that there is no evidence that the plaintiff was a half-sister of William Downey, through whom she claims title, as does also the defendant, and, second, that the sixth instruction given for the plaintiff is erroneous, in that, it authorized the jury to allow the plaintiff damages for detention for the five years next before the filing of this suit.

The defendant also claimed in the trial court that the property was originally owned by Martha Barrier, an aunt of

the defendant, and that prior to her death she made a will by which she devised the property to defendant and her brother, William Downey, as joint tenants, the survivor to have the whole, and, hence, upon his death she took the whole estate by survivorship. But there was no substantial evidence to support this claim. No such will was ever found or probated, and on the contrary it appeared that on April 2, 1869, a few days before her death, her said aunt deeded the property absolutely to said William Downey, and it was held by him until April, 1870, when he died without issue, single, and intestate. Upon his death the defendant took possession and has held it ever since. At that time the plaintiff was a widow, but in November, 1871, she married Charles Smith and her coverture continued until his death in October, 1896, and this suit was begun in October, 1897. In fact, this contention of a right by survivorship is not insisted upon here.

The first error assigned, that there is no evidence that the plaintiff was a half-sister of William Downey, is not tenable. The plaintiff testified that she is a daughter of Richard S. Downey, by his first marriage, and that the defendant and William Downey were children of said Richard S. Downey by his last marriage, which was either his third or his fourth marriage; it is not altogether clear whether he was married three or four times. The plaintiff further testified that Simeon (or John S., or Seaman) Downey was her full brother. If this be true, and it was substantial evidence to support the plaintiff's contention, the verdict of the jury to which this issue was submitted, is conclusive in this court. [James v. Ins. Co., 148 Mo. 1.] But the defendant's testimony did not amount to substantial evidence to the contrary. She disclaimed any knowledge on the subject, as she necessarily had to do in view of the fact that the plaintiff was thirty-one years old when the defendant was born. She said, however, that she heard a conversation between the plaintiff and her brother, Simeon, in which they spoke "about a woman that they lived

with, and they called her mother, and afterwards I" (the defendant) "asked who it was, and she said it was a woman they lived with; says I, 'Pa lived with her?' She says, 'No, he took us from her when he came to this country.' " On cross-examination she said she did not regard the plaintiff as "legal," and when pressed for her reason for thinking so, she said that the plaintiff "by her actions" said that she, the defendant, was illegitimate, and when further examined as to her meaning she said the plaintiff said her father "left a wife back there and came here and married again," and as she, defendant, was a child of the marriage here while her father had a wife back there, it made her, the defendant, illegitimate. The jury placed the proper estimate upon this testimony, and found that the plaintiff is a half-sister to the defendant, and also a half-sister to William Downey, who was a full-brother to the defendant, as she had always been treated by the whole family, including the defendant, until this controversy arose at the death of William Downey.

It is next contended that the sixth instruction given for the plaintiff is erroneous because it permits a recovery of damages for detention for five years next prior to the institution of this suit. The point of the contention is that the plaintiff was a married woman from 1871 to 1896, and that her husband had a vested right to the possession of his wife's property and to the rents, issues and profits thereof, which at his death passed to his administrator and not to his wife, and that during his life the plaintiff was not entitled to the possession, and, therefore, the husband and not the plaintiff was damaged by the detention, and that as the evidence showed a denial of the plaintiff's title in 1889, during the continuance of the husband's right to the possession, and as there is no evidence of any such denial after the husband's death until the answer was filed in this suit, the plaintiff is only entitled to damages from the date of the filing of the answer.

The plaintiff concedes the error in the instruction and

offers to remit the damages prior to the death of her husband in October, 1896, and asks this court to exercise the power conferred on it by section 866, Revised Statutes 1899, and enter such judgment as the trial court should have entered. In reply to the defendant's contention that there was no denial of the plaintiff's title except in 1889, the plaintiff refers to the fact that in the trial court, to sustain her claim by limitation, the defendant contended she had ousted the plaintiff prior to her marriage in 1871 and had held possession adversely to the plaintiff ever since, and, hence, that a formal demand and a denial by defendant was unnecessary after her husband's death.

It is true, as defendant contends, that during the coverture the plaintiff's husband was entitled, as husband, to the possession of his wife's property and to the rents and profits arising therefrom, and that the plaintiff only became entitled to the possession upon the death of her husband. The plaintiff had to concede this or else her action was barred by limitation. [Dyer v. Wittler, 89 Mo. 81; Hall v. French, 165 Mo. 430; Schouler's Dom. Rel. (2 Ed.), p. 142; Leete v. Bank, 115 Mo. l. c. 200; Arnold v. Willis, 128 Mo. l. c. 150; Keith v. Keith, 80 Mo. l. c. 127.]

But it is also true that the defendant, all through the trial, asserted possession adverse to the plaintiff's right, continuously since 1871, and it is wholly inconsistent for her now to deny plaintiff's right to damages for detention since the death of her husband in 1896. The jury found the value of the rents and profits to be three dollars and fifty cents a month. The plaintiff's husband died in October, 1896. The trial was on June 30, 1898. The court should have limited the plaintiff's right to damages to that period. The damages were assessed at $200, when they should have been for only $70.

For these reasons the judgment will be affirmed upon condition that within thirty days from this date the plaintiff file with the clerk of this court a remittitur of $130, leaving the

judgment to stand for $70 damages for detention, with six per cent interest thereon from June 30, 1898; otherwise the judgment will be reversed and the case remanded.    All concur.