STATE OF MISSOURI ex rel. ARMOUR PACKING
    COMPANY, Appellant, v. JOSEPH F. DICK-
    MANN, et al., Respondents.

St. Louis Court of Appeals, January 4, 1910.

1. OFFICERS: Damages: Damages Presumed from False Return.
    The law imposes the duty upon the officer to make a true
    return to a summons, and where this duty is breached, it pre-
    sumes damages in every instance.

2. APPELLATE PRACTICE: Damages: Officers: False Return:
    Failure to Award Nominal Damages. As a judgment for nominal
    damages carries the costs of the litigation with it, the right
    to have nominal damages allowed for an officer's breach of duty

is regarded as a substantial right, for the invasion of which a judgment will be reversed, even though it appear a substantial recovery may not be allowed.

3. **OFFICERS: Sheriffs: Action on Bond Sounds in Tort.** An action on a sheriff's bond for making a false return to a summons sounds in tort.

4. **DAMAGES: Nominal or Substantial.** In tort there can be no recovery, other than nominal damages, unless there is some damage, and there must be not only a wrong done, but a consequent injury, to permit a substantial recovery.

5. **OFFICERS: Sheriffs: Action on Bond: Damages: Measure of.** In an action on a sheriff's bond for making a false return to a summons, nominal damages only are recoverable, unless it appear that substantial loss or injury has been sustained, and the measure of recovery in such case is the actual damage entailed by the wrongful act, unless the officer acted maliciously or in bad faith.

6. ———: ———: ———: ———: **Evidence: Evidence Disproving Substantial Injury Competent.** In such an action, evidence tending to show no loss or injury resulted to plaintiff from the officer's dereliction is competent, to the end of defeating a substantial recovery.

7. ———: ———: ———: ———: ———: ———. And where, by reason of the false return, a judgment by default was rendered against the person suing on the bond, which he was compelled to pay, it was competent for the officer to show in mitigation of a substantial recovery that the judgment was for a just indebtedness owing by such person.

8. **PLEADING: Defenses: Damages: Matter in Mitigation.** Matter in mitigation, to be available as a defense, should be pleaded.

9. **LANDLORD AND TENANT: Relation Created How.** Though the relation of landlord and tenant may arise by implication, the relation must be created through contract, express or implied, that is to say, the tenant must occupy the premises of another in subordination of his title and with his consent, express or implied.

10. ———: **Action for Use and Possession: Tenancy Must Exist to Maintain Action.** An action for use and occupation cannot be maintained unless the relation of landlord and tenant, express or implied, exists, and where one occupies premises under a lease from a trespasser or one asserting an adverse right, the owner may not sue the occupant for use and occupation.

11. **EVIDENCE: Presumptions: Husband and Wife: Husband's Authority to Act for Wife.** In an action for use and occupation by an occupant holding under a lease authorized by the husband of the owner, a title adverse to the wife will not be presumed, nor will it be presumed that the husband had authority to make the lease, especially where she knew nothing of the occupancy, but the facts must be proved.

12. **HUSBAND AND WIFE: Married Woman's Act: Right of Husband.** Where the right of the wife, married prior to the Married Woman's Act, was a common law estate, the husband was entitled to the rents and profits thereof.

13. **EVIDENCE: Judicial Notice: Facts Reported in Another Case.** The court, in an action on the bond of a sheriff for false return to summons in an action by a third person against plaintiff, does not judicially know that plaintiff appeared in that suit, merely because that fact appears in the report of the case on appeal in such action.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

REVERSED AND REMANDED.

*G. B. Webster* for appellant.

(1) Upon the uncontroverted evidence the verdict and judgment should have been for the plaintiff. The amended answer admitted that the defendant Dickmann, as sheriff, made the return, and the testimony of the witnesses Boyd, Murray and Grissom, together with the evidence supplied by the charters of Armour & Company and the Armour Packing Company, none of which was contradicted or impeached, conclusively proved its falsity. The essential elements of recovery were thereby established and a judgment for the defendants is unsupported by the evidence. State ex rel. v. Rayburn, 22 Mo. App. 305; State ex rel. v. Harrington, 28 Mo. App. 287. Even though no substantial damages were proven, the plaintiff was entitled to judgment for nominal damages. State ex rel. v. Rayburn, 22 Mo. App. 305; State ex rel. v. Dunn, 60 Mo. 64. (2) All of the evidence

offered by the defendants was erroneously admitted, because either irrelevant or immaterial, or incompetent. (a) The entire testimony of the witness Macbeth was irrelevant and immaterial because its only probative effect was to show that the Regent Realty Company had a just cause of action against the Armour Packing Company, a question not properly in issue in this case. A public officer cannot defend his breach of duty by the contention that his misconduct has damaged no one. State ex rel. v. Case, 77 Mo. 253; Snell v. Mayo, 62 Ga. 743; Metcalf v. Stryker, 31 N. Y. 255; Cowan v. Sloan, 95 Tenn. 424; Lakin v. State, 89 Ind. 68; Goodrich v. Starr, 18 Vt. 227; Treasr. v. Weeks, 4 Vt. 215; Bacon v. Crosby, 7 N. Y. 195. It was further objectionable because it failed to show any liability of the packing company to the realty company. Mere use and occupancy of premises creates no liability for rent to the owner. Edmonson v. Kite, 43 Mo. 176; Sturgis v. Botts, 24 Mo. App. 286. (b) The letters of Armour Packing Company, without proof that they were genuine, and that the persons signing them were authorized to bind the packing company by the statements contained in them, were incompetent. 3 Wigmore Ev., sec. 2153. The presumption that they were genuine does not carry the presumption that the writers were authorized agents to bind their principal by their statements, because that would be to found a presumption upon a presumption, which cannot be done. Lawson, Presumptive Ev., pp. 652, 653; Glick v. Railroad, 57 Mo. App. 104; Pennington v. Yell, 11 Ark. 236; Doolittle v. Holton, 26 Vt. 588; U. S. v. Ross, 92 U. S. 283. (c) The circuit court erred in admitting in evidence the copies of the letters from Macbeth, no foundation for secondary evidence having been laid. The common law rule for securing documents in the hands of the opposite party for use in evidence, which it is admitted was not superseded by the statute, required the giving of a reasonable notice to produce. Sheehan v. Ins. Co., 53 Mo. App. 351; Coffman v. Ins.

Co., 57 Mo. App. 647; Harrison v. Foster, 62 Mo. App. 606. (3) The circuit court was in error in refusing to admit the receipts for rent of the premises paid to Orr by the packing company. Macbeth testified that he knew that Orr was claiming to be agent for the premises, and that when he heard that Orr had collected the rents he wrote and demanded the collections. This was a ratification of Orr's acts and made them binding *ab initio*. Kelsey v. Bank, 69 Pa. St. 426; Ruggles v. Washington Co., 3 Mo. 496; Stothard v. Aull, 7 Mo. 318; Kelly v. Gay, 55 Mo. App. 39. The evidence that the sheriff was informed of the falsity of his return while there was yet time to amend it was erroneously ruled out. Lynd v. Picket, 7 Minn. 184. (4) It was error to refuse the plaintiff's requested instruction numbered 7. State ex rel. v. Rayburn, 22 Mo. App. 305; State ex rel. v. Harrington, 28 Mo. App. 287; State ex rel. v. Dunn, 60 Mo. 64. (5) The circuit court committed further error in refusing the plaintiff's requested instruction 9. This presented the theory that there was no liability for rent from mere use and occupancy, and had an important bearing on the measure of damages. Edmondson v. Kite, 43 Mo. 176; Sturgis v. Botts, 24 Mo. App. 286.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1) Plaintiff's instructions were all erroneous and were properly refused by the court. Mere non-direction or failure to instruct is not reversible error, unless proper requests were made by the complaining party. Wheeler v. Bowles, 163 Mo. 398; Railroad v. Shoemaker, 160 Mo. 425; Harmon v. Donahoe, 153 Mo. 263; Feary v. O'Neill, 149 Mo. 467; Bertran v. Transit Co., 108 Mo. App. 70; Thompson v. Bucholz, 107 Mo. App. 121; Cornwall v. St. Louis Transit Co., 106 Mo. App. 135. (2) The record shows that before judgment had been entered in the case of the Regent Realty Company v. the Armour Packing Company, the latter filed

a motion to quash the return and also filed a bill of exceptions. This action constituted an appearance to that cause, and it cannot therefore complain that it was brought into court by a false return of the sheriff. Young v. Ranken, 4 Howard (Miss.) 27; Tootle-Queakly, etc., Co. v. Billingsly, 105 N. W. (Neb.) 85; Wilson v. Fowler, 3 Ark. 473. (3) The record also shows that after judgment in the case of Regent Realty Company v. Armour Packing Company, the latter sued out a writ of error and gave a supersedeas bond conditioned to pay the judgment if it should be affirmed in the appellant court. (a) The taking of an appeal constitutes an entry of appearance. 2 Ency. of Pleading and Practice, 614; Rumeli v. City of Tampa, 37 South 563; Hodges v. Frazier, 31 Ark. 58; Arkansas Coal Co. v. Haley, 62 Ark. 144; Waggoner v. Fogleman, 53 Ark. 181; Maude v. Rhodes, 34 Ky. 144; Gill v. Johnson, 58 Ky. 649. (b) Likewise the prosecution of a writ of error operates as an entry of appearance. Wilson v. Brandenberg, 16 Ark. 646; Bustamente v. Bescher, 43 Miss. 172. (4) If the prosecution of a writ of error and the giving of a supersedeas bond for the Armour Packing Company constituted an appearance to the suit brought by the Regent Realty Company, such appearance made valid the judgment theretofore obtained, which otherwise would have been invalid for want of service. Miller v. Mining & Milling Co., 192 Mo. 183; Curtis v. Jackson, 23 Minn. 268; Anderson v. Coburn, 27 Wisc. 558; Grantier v. Rosecrance, 27 Wisc. 489; Fee v. Big Sand Iron Co., 13 Ohio St. 563. (5) If the Armour Packing Company justly owed to the Regent Realty Company the amount of money which it was compelled to pay in the suit brought by the Regent Realty Company, it was not damaged by the return of the sheriff, even though such return were false. An officer, when sued for erroneous execution of process, can show that plaintiff's property taken under such process

was applied on a just liability of the plaintiff. Stow v. Yarwood, 14 Ill. 424; Bates v. Courtwright, 36 Ill. 518; Trip v. Grouner, 60 Ill. 474; Pierce v. Benjamin, 31 Mass. 356; Caldwell v. Eaton, 5 Mass. 399; Prescott v. Wright, 6 Mass. 20; Erie Preserving Co. v. Kane, 49 Mich. 377; Cooper v. Newman, 45 N. H. 339; Doolittle v. McCullough, 7 Ohio St. 299.

NORTONI, J.—This is a suit on the sheriff's official bond. The finding and judgment were for the defendant and plaintiff appeals. The breach alleged relates to the fact that the sheriff, through one of his deputies, made a false return on a writ of summons to the effect that he had personally served the present plaintiff, the Armour Packing Company, in a suit pending in the circuit court wherein the Regent Realty Company was plaintiff and the Armour Packing Company was defendant. As a result of the false return, a judgment was given in that case against the plaintiff for several hundred dollars. The judgment and the costs were afterwards paid and discharged and the defendant in that case instituted the present action on the sheriff's bond, seeking to recover the amount of the judgment and costs it was compelled to pay as a result of the false return referred to.

It appears that one Annie E. Kerr owned a certain lot of ground and store building situate thereon, in the town of Osceola, Missouri, and that plaintiff, the Armour Packing Company, occupied the same as its egg and produce depot at that point for several years from and after January 25, 1901. The evidence goes to show that the Armour Packing Company occupied the building referred to under a lease with one Orr, who claimed to be the agent of George M. Kerr, and that it paid Orr rent each and every month during the period of its occupancy. Annie E. Kerr afterwards sold the property at Osceola, Missouri, to the Regent Realty Company and assigned whatever claim she had for rent accrued to

her against the Armour Packing Company, because of
its several years' occupancy of the premises. The Regent
Realty Company, having succeeded to the title of Annie
E. Kerr, the true owner of the property, and her rights
touching any rents therefor accrued for its occupancy,
made a demand upon the Armour Packing Company for
ten dollars a month rent for all of the time it had occu-
pied the premises from and after January 25, 1901. The
Armour Packing Company insisted that it had rented
the property from Orr, acting as agent of one George M.
Kerr, and that it had paid such agent the rent during
all the time of its occupancy and declined to comply
with the demand of the Regent Realty Company. The
Regent Realty Company thereupon instituted suit in
the circuit court of the city of St. Louis against the
Armour Packing Company for the rent of the premises
referred to at the rate of ten dollars per month during
the full period of the Armour Packing Company's occu-
pancy thereof from and after January 25, 1901. Pro-
cess was duly issued against the Armour Packing Com-
pany and placed in the hands of the sheriff of the city
of St. Louis. It appears that the Armour Packing Com-
pany maintained no business office in the city of St.
Louis at that time, but another corporation under a very
similar name did; that is to say, Armour & Company
maintained a business office in St. Louis, and the
sheriff's deputy delivered a copy of the petition and
writ in the case referred to to the person in charge of the
office of Armour & Company in St. Louis. The deputy
sheriff thereupon, in the name of the defendant, his
principal, made a return on the summons to the effect
that he had served the same upon the Armour Packing
Company, defendant in that case. The return referred
to was regular in all respects but untrue in point of fact.
Afterwards, the case of the Regent Realty Company,
against the Armour Packing Company came on for trial.
The Armour Packing Company failing to appear thereto,
judgment was given against it for the full amount sued

for, together with interest and costs, which afterwards was fully paid and discharged. Having thus been compelled to pay the claim of the Regent Realty Company and interest and costs incident thereto, through the fault of the sheriff, as alleged, the Armour Packing Company instituted this suit on the officer's official bond, seeking to recover the amount of its expenditure in that behalf.

Upon a trial of the issue the circuit court refused all of the instructions requested and referred the case to the jury upon the facts. It is unnecessary to examine the instructions to determine whether or not they embody appropriate principles of law touching the facts in controversy as it is obvious the judgment must be reversed and the cause remanded for the reason the plaintiff is entitled to have nominal damages at any rate. That the defendant sheriff, through his deputy, made a false return on which judgment was afterwards given against the plaintiff in the present action is conclusively established; no one denies or disputes. The law imposes the duty upon the officer to make a true return and where this duty is breached, it presumes damages in every instance. Even though no substantial damages accrued to the plaintiff on account of the defendant's false return, the plaintiff is entitled to a nominal recovery at least on the presumption of damage which the law affixes for a breach of official duty to the end of enjoining an efficient and true service. [Sedgwick on Damages (8 Ed.), sec. 547, and (8 Ed.), sec. 103; State ex rel. Rice v. Harrington, 28 Mo. App. 287; The State to use v. Rayburn, 22 Mo. App. 303.] The doctrine obtains with full force when the cause of action relied upon relates to a false return of mesne process, as will appear by consulting the judgment in State ex rel. Rice v. Harrington, 28 Mo. App. 287.

Indeed, in this State nominal damages are allowed against officers for the most barren infraction of legal rights. As the judgment for nominal damages carries the costs of the litigation with it, the right to have nom-

inal damages allowed for a breach of duty is regarded as a substantial right, for the invasion of which a judgment will be reversed even though it appear a substantial recovery may not be allowed. [State to the use v. Rayburn, 22 Mo. App. 303; State ex rel. Rice v. Harrington, 28 Mo. App. 287.]

On the trial the defendant sought to mitigate the damages by introducing evidence tending to prove that the plaintiff, the Armour Packing Company, actually owed the rents for which a recovery was had in the case of Regent Realty Company against it and that, therefore, plaintiff suffered no substantial damages as it was compelled only to pay a just debt. This testimony was objected to by plaintiff, and it is argued here that it is not competent for the defendant to show in this case that plaintiff actually owed the rent, the payment of which was enforced in the case wherein the defendant made a false return. It is said that to permit the defendant in this case to show the Armour Packing Company owed the Regent Realty Company the rent sued for in that case would permit the introduction of a collateral issue in the present controversy. There is some force in the suggestion that such a defense introduces a collateral issue between the Armour Packing Company and the defendant sheriff. The courts are prone to confine the issue to as narrow limits as possible. However, we are not persuaded by the argument advanced that it is incompetent for the sheriff to show in mitigation the plaintiff suffered no substantial damage. Many cases are cited by counsel touching the measure of recovery when the action is against an officer for failure to levy or for a wrongful release of property or for permitting the escape of a prisoner held for debt. These authorities are not in point. It may be in such cases that the measure of recovery is the amount of the judgment, debt and costs appearing from the writ when the officer has permitted the execution to expire in his hands without making a levy. And it may be in other cases where the

officer has wrongfully released property held under the writ of attachment or execution the measure of recovery is the value of the property released. [Sedgwick on Damages (8 Ed.), sec. 545]. However, at common law, in a suit against an officer for failure to return an execution, a recovery may be had only for the amount of damages sustained. [Bennett v. Vinyard, 34 Mo. 216.] Be this as it may, we are not concerned with the rule in such cases for the facts in judgment present another question. Although the present action is on the sheriff's bond, there can be no doubt that it sounds in tort. [Sedgwick on Damages (8 Ed.), sec. 543.] Aside from the proposition heretofore stated, that the law presumes some damage from the dereliction of official duty and at least awards a nominal recovery therefor, it is fundamental throughout the law of torts that there shall be no substantial recovery unless there is some damage. In other words, the principle which pervades the entire doctrine of liability for tort, with more or less influence in every form of action, is to the effect that there must not only be a wrong done to one person by another, but a consequent injury or loss, as well, in order to permit a recovery on account of the wrong committed. It is true that the law may presume damages in some cases and allow a nominal sum for the wrong, as in trespass, when no particular injury appears. Be this as it may, there must appear a real injury to sustain a substantial recovery. And a suit against an officer for a false return presents no exception to the rule. Indeed, in an action against an officer for a false return, no recovery other than nominal is allowed unless it appear that substantial injury or loss has resulted to the party as a result of the false return. And the measure of recovery in such cases is the actual damage entailed by the wrongful act, unless it appear the officer acted maliciously or in bad faith. [Stimson v. Farnham, 7 Q. B. 175; Green v. Ferguson, 14 John. N. Y. 389; Mechem's Public Officers, sec. 746.]

As a corollary to this doctrine, it is, of course, competent for the officer to show, to the end of defeating a substantial recovery, that no injury or loss resulted to the plaintiff from his dereliction. If the officer may show that no loss accrued to the plaintiff, he is, of course, entitled to show as well that even though loss did accrue because of his breach of duty, it was slight and unimportant; that is to say, the officer may show relevant facts in mitigation of the damage to the end of defeating so much of a substantial recovery as is proper. When the officer acts in good faith, as here, the claim of the plaintiff is founded upon the justice and conscience of the case and it is certain that the most elementary principles of justice forbid a recovery beyond the actual damage or loss sustained. Now, in such cases, it is clear that every consideration of justice demands the officer shall be permitted to show such relevant facts as he may to elucidate the true amount of the plaintiff's actual damage or loss. To this end, we entertain no doubt whatever that the officer may show in mitigation of a substantial recovery that the plaintiff's expenditure liquidated a just indebtedness against itself and therefore entailed no loss or damage upon it for such amount as was applied to the payment of an outstanding obligation. Such seems to have been the opinion of a court of very high authority. See Green v. Ferguson, 14 John. N. Y. 389.

If, on a retrial, the defendant is able to show that the Armour Packing Company justly owed the Regent Realty Company the rent, or any part thereof, sued for and recovered by the Regent Realty Company, such evidence is competent in mitigation of the damages and should be received to that extent.

There was a plea in mitigation contained in the original answer. This plea seems to have been stricken out and the case was tried upon a general denial only. It should be stated that matter in mitigation, to be available as a defense, should be pleaded. [5 Ency. Pl.

and Pr. 773-4.] Upon a retrial, the answer may be amended in this respect if the defendant be so advised.

It is insisted by the plaintiff that the Regent Realty Company had no valid claim against it for the rent referred to and that, therefore, the facts relied upon by defendant in mitigation, as tending to show that the judgment on the false return operated only to compel plaintiff to pay a just debt are insufficient for that purpose. To determine this matter, it will be essential to notice those facts more particularly. As said before, it appears Annie E. Kerr owned a store building in Osceola, which was occupied by the Armour Packing Company. The evidence is not entirely clear, but it appears that the Armour Packing Company leased the premises from one Orr, who claimed to be the agent of George M. Kerr, a non-resident. After having leased the premises from Orr, the Armour Packing Company continued to occupy the same for several years from and after January 25, 1901, and it is said paid him rent monthly therefor. We gather from the record that George M. Kerr was the husband of Annie E. Kerr, who owned the property, and it does not appear that they were divorced or living apart. It may be that George M. Kerr had authority from his wife, Annie E. Kerr, to confer an agency upon Orr for the purpose of renting the property and collecting the rent, but it is not shown in the evidence. The facts touching this whole matter are meagerly developed in the proof. Of course, if George M. Kerr had authority to constitute Orr agent to rent the property of his wife, Annie E. Kerr, and the Armour Packing Company rented the property and paid the rent to such agent, this of itself would acquit the Armour Packing Company from further responsibility on that account. Nothing appears, however, tending to show any right in George M. Kerr to confer authority upon Orr to rent the property and, indeed, it is fairly inferable that Orr was an imposter; that he had no authority whatever from George M. Kerr or any other per-

son to rent the property. It is to be inferred from the testimony that Annie E. Kerr had no knowledge whatever on the subject of Orr's alleged agency. The evidence tended to prove that Orr rented the property and collected the rent without any authority and wholly failed to account to any one therefor. Afterwards, Annie E. Kerr conveyed the property to the Regent Realty Company and upon discovering that the Armour Packing Company was occupying the same, assigned whatever claim she had for rents to the Regent Realty Company by a writing to that effect. It does not appear that the Armour Packing Company ever attorned to the Regent Realty Company. It does not appear that the Armour Packing Company occupied the premises as the tenant of Annie E. Kerr, who owned the same at the time it took possession, nor as the tenant of the Regent Realty Company, which succeeded to her title. What may be shown on this score at another trial, we are, of course, not advised, but it is clear from what appears in the present record that the Regent Realty Company had no valid and enforceable demand against the Armour Packing Company at the time of the institution of the suit for use and occupation, as the relation of landlord and tenant did not exist between the parties. If Orr, the alleged agent of George M. Kerr, from whom the Armour Packing Company leased and under whom it occupied the premises, was an intruder and without authority to lease the same from Annie E. Kerr, the owner, then, of course, the relation of landlord and tenant was not thereby created between Annie E. Kerr and the Armour Packing Company. In such circumstances both Orr and the Armour Packing Company were trespassers. There is no proof in the case tending to show that the Armour Packing Company occupied the premises under a lease with Annie E. Kerr, the owner, or with any one authorized by her to lease the same. And it is certain the Armour Packing Company did not occupy the premises as the tenant of the Regent

Realty Company. It is true the relation of landlord and tenant may arise by implication but even then it must be created through contract express or implied; that is to say, the tenant must occupy the premises of another in subordination of his title and with his assent, express or implied. [18 Am. and Eng. Ency. Law (2 Ed.), 262-3; Underhill on Landlord and Tenant, 519, 578.]

If it appears to have been the intention of the tenant to enter or occupy the premises in subordination to the title of another, where there is no express contract touching the matter, it is said the relation of landlord and tenant arises by implication. [18 Am. and Eng. Ency. Law, 262-3-4-5.] Nothing in the record indicates an intention on the part of the Armour Packing Company to occupy the premises as the tenant of, or in subordination to, the title of either Annie E. Kerr or the Regent Realty Company. Indeed, it seems the Packing Company occupied the premises in subordination to the title of George M. Kerr, if he had or claimed any title, and it may be, from all the record discloses, that he was an adversary of Annie E. Kerr; that is to say, it may be that the title under which the Armour Packing Company occupied the premises was one adverse to the true owner, Annie E. Kerr. If this hypothesis is true, then, of course, the Armour Packing Company was a mere trespasser against Annie E. Kerr, the real owner of the property, and her successor in title, the Regent Realty Company.

It is the established law that an action for use and occupation of premises cannot be maintained unless the relation of landlord and tenant, express or implied, exists between the parties. Where one occupies premises under a lease from a trespasser or one asserting an adverse right, compensation for their use and occupation may not be recovered from the occupant by the true owner for the reason the relation of landlord and tenant does not exist. The owner may have a cause of

action in such circumstances but it is in tort for the wrong and not on an implied contract for use and occupation. [Edmonson v. Kite, 43 Mo. 176; Hood v. Mathis, 21 Mo. 308; Cohen v. Kylor, 27 Mo. 122; Sturges v. Botts, 24 Mo. App. 282; 18 Am. and Eng. Ency. Law 429.]

It is certain that the true owner may not recover for use and occupation on an implied relation of landlord and tenant where the tenant occupies in subordination to a title adverse to the true owner. [Underhill on Landlord and Tenant, 582; Sturges v. Botts, 24 Mo. App. 282.] Of course, it is not to be presumed that George M. Kerr, for whom Orr claimed to act as agent, was asserting an adverse title to Annie E. Kerr, his wife. But neither is it to be presumed that George M. Kerr had authority to confer an agency upon Orr in respect of his wife's property. This is especially true in view of the showing in the case tending to prove that Annie E. Kerr knew nothing whatever of Orr's alleged agency or that the Armour Packing Company was occupying the premises. However, it may be that the right of Annie E. Kerr was a common law estate, and that the marriage between Kerr and wife was prior to our Married Woman's Act of 1889, sec. 4340, R. S. 1899, in which event George M. Kerr is entitled to the rents and profits of the wife's realty. [Dillenberger v. Wrisberg, 10 Mo. App. 465; Smith v. White, 165 Mo. 590.] The facts do not appear. If such be the fact and Orr was authorized by George M. Kerr to make the lease, it is valid and the payments of rent to Orr were made to a proper party. In such circumstances, Annie E. Kerr had no claim for rents to assign to the Regent Realty Company, and that company, no valid claim to assert against the Armour Packing Company. The important point on the testimony is that it fails to appear the relation of landlord and tenant existed between the Armour Packing Company and either Annie E. Kerr or her grantee and assignee, the Regent Realty Com-

pany, and in the absence of such relation appearing, no valid claim could be asserted against the Armour Packing Company for use and occupation. This being true, of course, the evidence wholly fails to constitute proper matter of mitigation in this suit against the sheriff for a false return. This matter has been particularly noticed in the opinion for the reason it looks as though relevant facts were omitted from the proof which may be brought forward on another trial. In this view, we have commented upon the principles of the law pertaining to the relation of landlord and tenant, assuming that proof may be supplied showing that relation to have existed.

There is a considerable argument in the defendant's brief to the effect that the Armour Packing Company appeared in the case of the Regent Realty Company against it and is therefore estopped by that judgment to further dispute the validity of the claim there established. Upon reading the record several times, we have been unable to discover anything whatever therein tending to support this argument. It seems the counsel on both sides have briefed it as though it appeared in the case. The questions thus argued upon the assumption that such fact appears in the present record will not be noticed for the reason they are not relevant to the case made by the proof. The facts referred to appear in the report of the former case of Regent Realty Company v. Armour Packing Company, 112 Mo. App. 271. However that may be, we are unable to judicially know those facts in the present controversy.

The judgment should be reversed and the cause remanded. It is so ordered. All concur.